IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLANOR ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 12 C 7985 |
| | ) | |
| ADVOCATE HEALTH AND HOSPITALS | ) | Judge Virginia M. Kendall |
| CORPORATION d/b/a ADVOCATE CHRIST | ) | |
| MEDICAL CENTER and MARY ANN | ) | |
| SEDLACEK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Advocate Health and Hospitals Corporation and Mary Ann Sedlacek move for summary judgment on the six claims asserted in Plaintiff Ellanor Anderson's Complaint. Anderson alleged race discrimination, harassment, and hostile work environment (Count I), retaliation (Count II), and wrongful termination (Count III) in violation of Title VII of the Civil Rights Act of 1964 against her employer, Advocate. Anderson also alleged race discrimination, harassment, and hostile work environment (Count IV), retaliation (Count V), and wrongful termination (Count VI) in violation of 42 U.S.C. § 1981 against both Defendants. Because there are genuine issues of material fact related to Anderson's claims regarding race discrimination and retaliation, this Court denies the Defendants' motion for summary judgment regarding those claims. The Defendants' motion is granted with respect to Anderson's hostile work environment claims.

## FACTS

Anderson, a Black woman, worked for Advocate as a registered nurse from February 2007 to October 2008. Anderson worked in the Adult Heart Surgical Unit ("ASHU") until June

2007, when she was transferred to the Post Anesthesia Care Unit ("PACU") (Dkt. No. 46 at ¶¶ 2, 3, 5, 9.) Karen Bogdan supervised Anderson in the ASHU while Sedlacek, a White woman, supervised Anderson once she was transferred to the PACU. (Dkt. No. 46 at ¶ 5, 6, 10.)

The parties dispute whether Sedlacek treated Anderson differently than the other nurses. (Dkt. No. 46 at ¶ 10; Dkt. No. 59 at ¶ 7.) Anderson alleges that Sedlacek treated her differently than White nurses by refusing to allow her to leave the building at lunch, disregarding her medical restrictions regarding her foot, writing her up for missing a scheduled antibiotic dose, requiring her to come in even when she was not the "next on call," accounting for her hours differently, and referring to her as "you people" when Anderson raised complaints. (Dkt. No. 59 at ¶¶ 7-12.) The Defendants universally deny Anderson's allegations. Anderson wrote complaint letters and met with employees from Advocate's Human Resources Department and Employee's Assistance Program ("EAP"); but the parties disagree as to whether Anderson specifically complained about racial harassment or discrimination. (Dkt. No. 46 at ¶38; Dkt. No. 59 at ¶¶ 24-25, 31.) In mid-September 2008, Anderson met separately with Sedlacek and Sedlacek's supervisor, Vickie Williams, to discuss discipline associated with a complaint made by a patient's family about Anderson. (Dkt. No. 46 at ¶¶ 42-43.) After Williams informed Anderson that the discipline was rescinded, Anderson testified that she told Sedlacek and Williams that she was going to file a discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). (Dkt. No. 46 at ¶¶ 42-43; Dkt. No. 59 at ¶¶ 29-30.)

On September 29, 2008, Kim Pasquale complained to Sedlacek that on September 25, 2008, Anderson punched her in the back. (Dkt. No. 46 at ¶ 53.) Sedlacek called Anderson on the phone and told her that she was accused of hitting Pasquale and suspended pending Advocate's investigation. (Dkt. No. 59 at ¶32.) Sedlacek told Anderson not to return to work until she heard

back from her. (Dkt. No. 59 at ¶ 35.) Anderson later met with Sedlacek and Williams to tell them her side of the story. (Dkt. No. 59 at ¶ 37.) Anderson denied hitting anyone, instead contending that Pasquale and another co-worker were racing their rolling chairs across the floor. (Dkt. No. 59 at ¶¶ 37, 39; Dkt. No. 46 at ¶ 57.) Anderson alleges that she again told Sedlacek and Williams that she was going to file a charge with the EEOC at the meeting. (Dkt. No. 59 at ¶ 40.) As a result of the incident, the Defendants terminated Anderson's employment on October 8, 2008 for violating Advocate's Workplace Violence Policy. (Dkt. No. at ¶¶ 68-70.) Anderson then filed an EEOC race discrimination charge on November 10, 2008 and received a notice of a right to sue on August 2, 2012. (Dkt. No. 46 at ¶ 44.) Anderson filed the present Complaint alleging racial discrimination, harassment, hostile work environment, retaliation, and wrongful termination on October 5, 2012. (Dkt. No. 1.)

## <u>LEGAL STANDARD</u>

"Summary judgment is appropriate when the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c); *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007). A genuine issue of material fact arises only if sufficient evidence favoring the non-moving party exists to permit a jury to return a verdict for that party. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *Omnicare, Inc. v. UnitedHealth Grp., Inc,*, 629 F.3d 697, 704-05 (7th Cir. 2011). Rather, courts view all facts and draw all reasonable inferences in the non-moving party's favor, and determine whether there is a genuine issue of triable fact. *See Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). As the party opposing the motion for summary judgment, Anderson "gets the benefit of all facts that a

reasonable jury might find." *See Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011).

## DISCUSSION

### I. Statute of Limitations

As a threshold matter, all of Anderson's 42 U.S.C. § 1981 claims are subject to 28 U.S.C. § 1658's 4-year statute of limitations. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004). Because Anderson filed her Complaint on October 5, 2012 (Dkt. No. 1; Dkt. No. 38 at ¶ 4), this Court considers events which occurred as early as October 5, 2008 on all her claims. Additionally, "if a plaintiff alleges 'continuing violations,' which constitute a pattern and practice of discrimination," courts may look outside of the relevant time period. *Id.* at 270 (doctrine applies to Title VII as well as § 1981 claims) (internal citation omitted). The "continuing violations" doctrine precludes recovery for "discrete acts of discrimination or retaliation that occur outside the statutory time period" but permits consideration of behavior alleged outside the statutory time period "so long as an act contributing to the claim takes place within the statutory period." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Here, the Defendants suspended Anderson on September 29, 2008 and terminated her on October 8, 2008 (Dkt. No. 38 at ¶ 70). The termination constitutes an adverse employment action, *see Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012), that occurred within the statutory period. Because Anderson's termination took place within the statutory period and necessarily contributes to her claims of race discrimination and retaliation, this Court may consider actions outside the statutory period associated with Anderson's discrimination and retaliation claims under both § 1981 and Title VII.

However, the Court is unable to consider allegations related to Anderson's hostile work environment claim under § 1981 outside of the statutory period. Here, § 1658 allows for consideration of complained-of actions as early as October 5, 2008. Because Anderson was suspended on September 29, 2008 and never went back to work at Advocate, there are no acts contributing to her hostile work environment claim within the statutory period. *See Dandy*, 388 at 270-71. Therefore, this Court dismisses Anderson's § 1981 hostile work environment claim against both Defendants.

**II. Race Discrimination**

Counts I and IV allege racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Although "[§] 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996).

There are two ways Anderson may prove her claims: the "direct" and "indirect" methods of proof. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (citing *Collins v. Amer. Red Cross*, 715 F.3d 994, 999 (7th Cir.2013)). "Under the direct method, a plaintiff must provide either direct or circumstantial evidence that the employer had a discriminatory motivation. And under the indirect method, a plaintiff must satisfy the familiar requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* However, the majority of judges in this circuit have opined that the time has come to jettison the "ossified direct/indirect paradigm" in favor of a simple analysis that a reasonable jury could infer prohibited discrimination. *See id.*, (citing *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir.2012) (Wood, J., concurring)).

A plaintiff establishes unlawful discrimination under the direct method by presenting direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley*

*v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). A plaintiff must put forth evidence that demonstrates she is a member of a protected class and as a result suffered the adverse employment action. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006). The focus of the direct method of proof is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action. *Id.* Circumstantial evidence includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); *Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007).

The Defendants contend that Anderson may only proceed under the indirect method because she has no direct evidence of discrimination;  however, Anderson proceeds under the direct method by offering circumstantial evidence. Specifically, Anderson alleges that (1) her termination was suspicious and pretextual; (2) she was treated differently than White nurses; and (3) ambiguous comments were directed towards her. "In order to defeat summary judgment, the plaintiff one way or the other must present evidence showing that she is in a class protected by the statute, that she suffered the requisite adverse action (depending on her theory), and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason.  Put differently, the time has come to collapse all [the direct and indirect] tests into one." *See Coleman*, 667 F.3d at 863.  Drawing all

inferences in favor of Anderson, material issues of fact preclude summary judgment on Anderson's race discrimination claims.

Regarding the suspiciousness of her termination, although "speculation about discrimination will not survive summary judgment," *Hutt v. AbbVie Products, LLC*, 2014 WL 3033126, at *4 (7th Cir. July 7, 2014), Anderson maintains that she specifically complained about racial discrimination throughout her employment. Anderson claims she complained to Marios Bailey and Jeremy Sadlier of HR about racial problems. (Dkt. No. 59 at ¶ 24.) Anderson testified that she also sought assistance from the EAP multiple times to deal with workplace discrimination. (Dkt. No. 46 at ¶ 19; Dkt. No. 59 at ¶ 25.) Of utmost importance is Anderson's allegation that in mid-September 2008, she met with Sedlacek and Williams separately and testified that she informed them that she planned to file an EEOC charge for race discrimination. (Dkt. No. 59 at ¶ 29.) The Defendants terminated Anderson on October 8, 2008, for Anderson's alleged violation of the Workplace Violence Policy. (Dkt. No. 46 at ¶ 68.)

Timing is not suspicious when an investigation leading to a termination is prompted by complaints. *See Tank v. T-Mobile USC, Inc.*, 2014 WL 3360476, at *6 (7th Cir. July 10, 2014). Here, a co-worker complained to Sedlacek on September 28, 2009 alleging Anderson had punched her in the back on September 25, 2008. (Dkt. No. 53 at ¶¶ 53-54.) However, Anderson distinguishes herself because the employee in *Tank* did not proffer evidence to dispute the complaints against him, *see Tank.*, 2014 WL 3360476, at *6, whereas here the parties dispute whether Anderson punched her co-worker (Dkt. No. 38 at ¶¶ 53-68; Dkt. No. 45 at ¶¶ 33, 39). The legitimacy of the investigation and subsequent termination depends on the alleged punch; yet there is a fundamental dispute as to whether Anderson threw the punch. If there was no punch, then the jury could find that Anderson's discharge took place under suspicious timing. A

reasonable jury could credit Anderson's testimony and find that the circumstances surrounding her termination were suspicious.

For the same reasons, Anderson has additionally raised a genuine dispute regarding pretext. *See Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010) (often, circumstantial evidence from which a reasonable jury can find circumstantial evidence of discriminatory animus can also constitute circumstantial evidence of pretext). Here, the Defendants claim they terminated Anderson for violating the Workplace Violence Policy when she allegedly hit a co-worker. (Dkt. No. 46 at ¶¶ 53-68.) After Pasquale initially complained, the Defendants met with Anderson and took statements from Pasquale and one witness. (Dkt. No. 46 at ¶¶ 56, 62). The parties dispute whether Anderson hit her co-worker (Dkt. No. 46 at ¶ 68; Dkt. No. 59 at ¶¶ 33, 39), and the only undisputed witness statement does not mention Anderson's name. (Dkt. No. 46 at ¶ 62; Dkt. No. 59 at ¶¶ 46, 51). Thus, there is a genuine dispute of material fact as to whether the Defendants' honestly terminated Anderson for violating the Workplace Violence Policy. *See Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) ("a party establishes pretext with evidence that the employer's stated reason … 'was a lie—not just an error, oddity, or oversight.' ") (quoting *Van Antwerp*, 627 F.3d at 298).

Second, a reasonable jury could conclude that Anderson was treated less favorably than similarly situated White employees. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). The relevant factors are whether the employee "(i) held the same job description, (ii) were subject to the same standards, [and] (iii) were subordinate to the same supervisor." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Here, although the Defendants terminated the three PACU employees who were accused of violating the Workplace Violence Policy while Sedlacek served as PACU supervisor, (Dkt. No. 46 at ¶¶ 46-52.), of greater relevance are Anderson's claims that Sedlacek restricted her from leaving the building for lunch, made her work alone in an isolation unit and transport patients alone on an injured foot, and disciplined her for missing an antibiotic treatment. Anderson claims that Sedlacek did not subject the White nurses to the same treatment. (Dkt. No. 59 at ¶¶ 8-10.) Additionally, Anderson claims that Sedlacek required her to work on her day off even when she was not "next on call" even though the white nurse who actually was "next on call" was not asked to come in. (Dkt. No. 59 at ¶ 11.) Anderson further contends that Sedlacek paid  White nurses for hours spent at conferences but refused to pay Anderson for the same. (Dkt. No. 59 at ¶ 12.) The Defendants unequivocally deny  these allegations; but because this Court must credit Anderson's version of the events at this stage, *see Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003), she has established a material dispute for trial. It is for the jury to decide whether White nurses were treated more favorably than Anderson.

Finally, Anderson has presented evidence that Sedlacek directed ambiguous language at her. Anderson testified that when Sedlacek spoke to her, Sedlacek referred to black employees as "you people" and accused "you people" of always complaining when they reported racially-motivated incidents. (Dkt. No. 59 at ¶ 7.) Although racially ambiguous, a plaintiff does not need conclusive evidence that a race-neutral phrase is a racial slur to survive summary judgment. *Lambert v. Peri Formworks, Inc.*, 723 F.3d 863, 869 (7th Cir. 2013). It is the province of the jury to decide whether "you people" constituted a racial slur. *See, e.g., Lambert*, 723 F.3d at 869 (jury must determine whether "gorilla" and "donkey" were racial slurs); *Bannon v. University of Chicago*, 503 F.3d 623, 626-29 (7th Cir. 2009) (finding "wetback" as a racial slur for Mexicans).

Taken together, Anderson has sufficiently presented a "convincing mosaic" of circumstantial evidence from which a factfinder could make a reasonable inference of race discrimination. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Therefore, this Court denies the Defendants' motion for summary judgment with respect to Anderson's discrimination claim.

### III. Retaliation

Counts II and V claim retaliation in violation of Title VII and 42 U.S.C. § 1981. To prevail on a retaliation claim under the direct method, the plaintiff must show: (1) that she engaged in activity protected by Title VII, (2) the Defendants took an adverse employment action against her, and (3) there was a causal connection between her protected activity and the Defendants' adverse employment action. *See Coleman*, 667 F.3d at 859. For substantially the same reasons that Anderson sufficiently created a triable issue as to whether her termination involved suspicious timing and was pretextual, she has also created a genuine issue of material fact regarding retaliation.

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because [t]he [employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a) (2014). "Filing a charge with the EEOC about the alleged discrimination is the most obvious form of statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011).

Although "[c]omplaining about a co-worker's actions is not statutorily protected expression when the complained of conduct does not relate" to a protected characteristic," *Tank*, 2014 WL 3360476, at *6, Anderson sufficiently clears this hurdle. Here, Anderson testified that when she met with Sedlacek and Williams separately in mid-September 2008, she informed them

of her intentions to file an EEOC charge. The Defendants dispute whether Anderson specifically mentioned that she intended to file the charge, (Dkt. No. 46 at ¶¶ 39-43; Dkt. No. 59 at ¶ 29.), it is undisputed that the Defendants terminated Anderson shortly thereafter on October 8, 2008. *See Coleman*, 667 F.3d at 860 (circumstantial evidence of retaliatory intent includes suspicious timing). (Dkt. No. 46 at ¶¶ 68-69.) The parties therefore have a fundamental dispute as to whether the Defendants were aware that Anderson was going to file a charge. Accepting Anderson's version of events at this stage as the Court must, a reasonable jury could conclude that Anderson's termination was retaliatory for informing her superiors that she planned on filing a racial discrimination charge.

This does not end the Court's inquiry. To prevail, Anderson must demonstrate the causal link that shows her intention to file an EEOC charge was a "substantial or motivating factor" in the Defendants' decision to terminate her by either direct or circumstantial evidence. *See Coleman*, 667 F.3d at 860. Circumstantial evidence includes: (1) suspicious timing, oral or written ambiguous statements, or other behavior that might infer retaliatory intent, (2) evidence that similarly situated employees were treated differently, or (3) a pretextual reason for the termination. *Id.* Each type of evidence is sufficient on its own, or they can be used together. *Id.*

As explained above regarding the discrimination claims, the parties dispute the facts regarding all three types of circumstantial evidence. *See id.* (circumstantial evidence includes (1) suspicious timing, oral or written ambiguous statements, or other behavior, (2) evidence that similarly situated employees were treated differently, or (3) a pretextual reason for the termination). Thus, there exist genuine disputes of material fact as to whether there is a causal link between Anderson's intention to file with the EEOC and her termination. Therefore, this

Court denies the Defendants' motion for summary judgment with respect to Anderson's retaliation claims.

### IV. Hostile Work Environment under Title VII

In Count I of her Complaint, Anderson alleges that Advocate subject her to a hostile work environment through Sedlacek's use of racial epithets and worse treatment than White nurses. As a threshold matter, the Defendants dispute whether Anderson properly brought her Title VII hostile work environment claim with the EEOC. (Dkt. No. 37 at 5-8.) "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *Id.* at 503. "Ordinarily, a claim of … harassment cannot be reasonably inferred from allegations in an EEOC charge of … discrimination." *Id.* However, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* When construing EEOC charges, "the complaint in the civil action … may properly encompass any … discrimination like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976).

Here, Anderson's claim of hostile work environment cannot be reasonably inferred from the allegations of race discrimination in her EEOC charge. Under the basis for her claim in both her formal charge and EEOC Intake Questionnaire, Anderson checked the boxes for "racial discrimination" and "retaliation." (Dkt. No. 40-7 at 4.) The Intake Questionnaire does not provide a box to indicate "hostile work environment" as a claim, but it provides an "Other reason

for discrimination" line, which Anderson left blank. (Dkt. No. 40-7 at 4.) Nor are there any facts in either the charge or the questionnaire leading to a reasonable inference that Anderson was pursuing a hostile work environment claim. The description of the Defendants' conduct in Anderson's charge and questionnaire supports only one theory, that of race discrimination. Accordingly, the Defendants' are granted summary judgment on Anderson's hostile work environment claim under Title VII.

## CONCLUSION

For the foregoing reasons, this Court grants the Defendants' motion for summary judgment with respect to Anderson's hostile work environment claims and denies the Defendants' motion for summary judgment for the remaining claims against both defendants for race discrimination and retaliation.

_____ _Virginia M. Kendall_ _____
Virgin
United States District Court Judge
Northern District of Illinois

Date:  September 29, 2014